## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STRUCTURAL GROUP, INC.,** | : | |
| | : | **Civil Action No. 1:07-cv-01793** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **LIBERTY MUTUAL** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant** | : | |
| ..................................... | : | |
| | : | |
| **LIBERTY MUTUAL** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Third-Party Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **LYONS CONSTRUCTION** | : | |
| **SERVICES, INC.** | : | |
| | : | |
| **Third-Party Defendant** | : | |

## MEMORANDUM

Before the Court is Defendant Liberty Mutual Insurance Company's motion to stay the above-captioned action pending resolution of related proceedings before the Pennsylvania Board of Claims (Doc. No. 22) and Plaintiff Structural Group, Inc.'s request, voiced during a case management conference held January 22, 2008 (Doc. No. 17), for a protective order limiting the total number of depositions to three per side (Doc. No. 24 at 25–26). For the reasons that follow, both the motion to stay and the request for a protective order will be denied.

I. **BACKGROUND**

Plaintiff Structural Group, Inc. ("Structural") initiated the above-captioned action on October 1, 2007, with the filing of a two-count complaint against Defendant Liberty Mutual Insurance Company ("Liberty Mutual"). (Doc. No. 1.) In the complaint, Structural alleges that Liberty Mutual unlawfully breached the terms of a payment bond (the "Bond") by failing to remit payment to Structural for foundation work performed at the Shippensburg University Student Recreation Center (the "Project") pursuant to a subcontract (the "Subcontract") with Lyons Construction Services, Inc. ("Lyons"), the Project's prime contractor. (Id.) Nine days after the filing of Structural's complaint, the State System of Higher Education ("SSHE"), the Project's owner, filed a claim against Liberty Mutual and Lyons with the Pennsylvania Board of Claims (the "Board"). See State Sys. of Higher Educ. v. Lyons Constr. Servs., Inc., Board of Claims Docket No. 3916, http://sites.state.pa.us/PA_Exec/BOC/pdf/docket/3916.pdf (last visited Sept. 29, 2008).

Lyons filed an answer and counterclaim with the Board on November 28, 2007. Id. That same day, Lyons and Structural entered into a litigation cooperation agreement (the "Agreement") pursuant to which Structural agreed to "investigate, prepare, and assemble its own claims and defenses [against the SSHE] and present the same [by and through Lyons] in an ex rel fashion to the Pennsylvania Board of Claims." (Doc. No. 23-4 at 17.) As the Agreement explains:

> Both Lyons and Structural claim that they are entitled to additional compensation for delays, inefficiency, certain extra work, and other costs due to, inter alia, the differing site conditions encountered during Structural's work on the Project. In addition, both Lyons and Structural claim that they are entitled to the lost profit and other costs due to the wrongful termination of their respective contracts. . . .

> Additionally, Structural claims that it is entitled to payment of monies owed under the Subcontract, including payments of monies owed for work performed pursuant to a Change order dated September 14, 2006. . . .  Neither Lyons nor its surety, Liberty Mutual Insurance Company, have made payment to Structural for the Subcontract balance and Change Order at issued based on [SSHE's] wrongful termination of the Prime Contract.

(Id. at 15–16.)

On December 3, 2007, Liberty Mutual filed a motion to dismiss count two of Structural's complaint (Doc. No. 11) and a brief in support thereof (Doc. No. 12).  Structural timely filed a brief in opposition (Doc. No. 13) to the motion to dismiss, to which Liberty Mutual timely filed a brief in reply (Doc. No. 14).  On January 31, 2008, Liberty Mutual filed a third-party complaint against Lyons (Doc. No. 19), and, on February 11, 2008, Liberty Mutual filed the instant motion to stay (Doc. No. 22) and a brief in support thereof (Doc. No. 23).  Structural timely filed a brief in opposition (Doc. No. 24) to the motion to stay, to which Liberty Mutual timely filed a brief in reply (Doc. No. 14).

## II.   DISCUSSION

### A.   Liberty Mutual's Motion to Stay

"Abstention doctrines are judicially created and self-imposed limitations on courts' adjudication of cases that are properly within their jurisdiction."  17A James Wm. Moore et al., Moore's Federal Practice § 122.01[1] (3d ed. 2007).  The United States Supreme Court has created and refined five abstention doctrines to limit federal court jurisdiction.  See id.  The *Pullman*, *Thibodaux*, and *Burford* doctrines advocate abstention in the face of unsettled questions of state law; the *Younger* doctrine requires abstention to avoid interfering with pending

state proceedings; and the *Colorado River* doctrine prescribes abstention "for reasons of sound judicial administration in the context of duplicative, concurrent federal-state litigation." Id.

In *Colorado River*, the United States brought suit, in its own behalf and on behalf of two Indian tribes, in district court against more than 1000 water users, seeking a declaration of the Government's rights to waters located within Colorado Water Division No. 7. See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 805 (1976). Shortly thereafter, one of the defendants in that action filed an application in the state court for Division No. 7 seeking an order directing service of process on the United States in order to make it a party to state-court proceedings for the purpose of adjudicating all of the Government's claims, both state and federal. See id. at 806. Several defendants and intervenors subsequently filed a motion to dismiss in the district court on the ground that the court was without jurisdiction to determine federal water rights. See id. Rather than dismiss the action, the district court stayed the proceeding. See id. at 807. The Court of Appeals for the Tenth Circuit reversed the district court, and the Supreme Court reversed the Court of Appeals. See id. at 820–21.

Reinstating the stay, the Supreme Court explained that, although the case fell outside the then-recognized abstention doctrines, the general principle is to "giv[e] regard to conservation of judicial resources and comprehensive disposition of litigation" by avoiding duplicative litigation. Id. at 817 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)). The Court nonetheless cautioned that

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair

> to the state court would clearly serve an important countervailing interest.

Id. at 813 (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188–89 (1959)). Revisiting *Colorado River* seven years later, the Court again emphasized the extraordinary nature of the doctrine.: "When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 28 (1983).

The Court identified four factors that a federal court should consider in determining whether the interests of "wise judicial administration" outweigh "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id. at 817. These factors are: (1) which court first assumed jurisdiction over the res involved in the actions, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, (4) and the order in which jurisdiction was obtained by the concurrent forums. Id. at 818. In *Colorado River*, the Court found that a number of factors counseled against concurrent federal proceedings, the most important of which was a clear federal policy against "piecemeal adjudication of water rights in a river system." Id. at 819. Other considerations included "(a) the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss, (b) the extensive involvement of state water rights occasioned by this suit naming 1,000 defendants, (c) the 300-mile distance between the [district court] and the [state court for] Division 7, and (d) the existing participation by the [United States in state proceedings] in Division 4, 5, and 6." Id. at 820.

Notwithstanding the explicit pronouncements of the Supreme Court regarding "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" and that Court's careful development of a handful of "extraordinary and narrow" exceptions to the duty of a district court to adjudicate a controversy properly before it, Liberty Mutual points to the *Colorado River* doctrine and argues that "[t]his is not a case where Liberty Mutual is asking the federal court to abstain in light of a parallel state proceeding." (Doc. No. 23 at 14.) Rather, Liberty Mutual contends that the Court simply "cannot" determine whether the disputed payments to Structural are "justly due"—a condition imposed under the Bond—until the Board disposes of SSHE's claim

> because only the Board has jurisdiction to determine (a) whether the University properly terminated Lyons' prime contract; and (b) if proper, whether the termination was the result of Structural's allegedly delayed and defective micropile drilling operations, which is the same work for which Structural seeks payment from Liberty Mutual.

(<u>Id.</u> at 11.) Liberty Mutual adds that "deference to the Board's special expertise in claims of this nature is warranted." (<u>Id.</u> at 15.)

At bottom, the Board is "an independent administrative board," 62 Pa. Cons. Stat. Ann. § 1721, established for the express purpose of arbitrating claims against the Commonwealth arising from contracts to which it is a party, <u>see</u> <u>Foley Bros. v. Pa. Dept. of Highways</u>, 163 A.2d 80, 86 (Pa. 1960). And, as the complaint and the above caption make plain, the Commonwealth is not a party to the Subcontract or this action. (<u>See</u> Doc. No. 23-2 at 12.) There is no need for the Court to await the Board's determination, years off perhaps, of whether the disputed payments to Structural are "justly due" (Doc. No. 23 at 11), or to defer to the Board's "special

expertise" (id. at 15). While such expertise is hardly in dispute, neither is it a sufficiently persuasive reason for this Court to abstain from exercising jurisdiction over this case.

Furthermore, nothing in the Board of Claims Act describing the powers and duties of the Board purports to strip federal courts of jurisdiction to hear disputes between a surety and an obligee. See 62 Pa. Cons. Stat. Ann. §§ 1722, 1724 (West 2008). On the contrary, it is "the sovereign immunity of the Commonwealth [that] has been [abrogated] under the provisions of the Board of Claims Act." McKeesport Mun. Water Auth. v. McCloskey, 690 A.2d 766, 774 (Pa. Commw. Ct. 1997). Thus, by grant of the legislature, the Board is empowered to "[a]rbitrate claims before it, 62 Pa. Cons. Stat. Ann. § 1722, and has "exclusive jurisdiction to arbitrate claims arising from . . . (1) A contract entered into by a Commonwealth agency[;] . . . (2) A written agreement executed by a Commonwealth agency and the Office of Attorney General[; and] . . . (3) Unless otherwise provided by law, a contract entered into by a Commonwealth agency involving real property interests in which the Commonwealth agency is the respondent," id. § 1724. The legislature has not vested the Board with "exclusive primary jurisdiction" such that the Board "is the only forum in which complaints within that jurisdiction may be brought." MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1103 (3d Cir. 1995) (observing that "when the legislature provides an agency with 'exclusive primary jurisdiction,' it preempts the courts' original jurisdiction over the subject matter").

As the Third Circuit Court of Appeals has explained, a threshold issue that must be decided under the *Colorado River* doctrine, the only abstention doctrine that could have any bearing upon this case, "is whether the two actions are 'parallel.' If they are not, then the district court lacks the power to abstain." Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997).

Generally, actions are parallel when they involve the same parties and the same claims. See Trent v. Dial Medical of Florida, Inc., 33 F.3d 217, 224 (3d Cir.1994). Liberty Mutual, however, makes no attempt to argue that this action and the Board proceeding are in any way parallel. (See Doc. No. 23 at 14 (explaining that "[t]his is not a case where Liberty Mutual is asking the federal court to abstain in the light of a parallel state proceeding").) For this reason alone, even if the other factors militated in favor of abstention, the Court would lack the power to abstain.

Ultimately, the Court's "task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25–26 (1983). Such circumstances and justifications do not exist. For the foregoing reasons, Liberty Mutual's motion to stay will be denied.

Although abstention would be inappropriate under any of the recognized doctrines, such a finding does not necessarily exclude the possibility of staying these proceedings. The vitality of Justice Cardozo's observation in Landis v. N. Am. Co., 299 U.S. 248, 254 (1936), is undiminished by the passage of time: "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." More appropriately, "a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Bechtel Corp. et al. v. Local 215, Laborers' Int'l Union of N. Am. et al., 544 F.2d 1207, 1215 (3d Cir. 1976).

In determining whether to grant a motion to stay, courts should consider: (1) the length of the requested stay; (2) the "hardship or inequity" that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; (4) whether a stay will simplify issues and promote judicial economy. See Landis, 299 U.S. at 254–55; CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 135–36 (3d Cir. 2004) (citing Landis, 299 U.S. at 254–55). Stays of indefinite duration are especially discouraged and, because they put the parties "effectively out of court," Moses H. Cone Mem'l Hosp., 460 U.S. at 1, any order granting such a stay is appealable. See Dover v. Diguglielmo, 181 F. App'x 234, 237 (3d Cir. 2006) (noting that a stay of indefinite duration "can itself constitute an abuse of discretion"); CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 135 (3d Cir. 2004); Cheyney State Coll. Faculty v. Hufstedler, 703 F.2d 732, 738 (3d Cir. 1983) ("We emphasize that *Landis* approved stays of moderate length, and not those of indefinite duration . . . ."); Gold et al. v. Johns-Manville Sales Corp. et al., 723 F.2d 1068, 1075 (3d Cir. 1983) (declining petitioners' request for a stay of indefinite duration). The Third Circuit Court of Appeals, like many of its sister circuits, has further warned that "efficiency does not, by itself, allow a federal court to refuse to exercise its jurisdiction in favor of proceedings in an alternative forum." CTF Hotel Holdings, Inc., 381 F.3d at 135; see also Ortega Trujillo v. Conover & Co. Commc'ns, Inc., 221 F.3d 1262, 1265 (11th Cir. 2000) ("[T]he interests of judicial economy alone are insufficient to justify . . . an indefinite stay").

Because neither Liberty Mutual nor Structural addressed the possibility of a stay under any means than the recognized abstention doctrines in arguing the instant motion, the Court will deny the motion and direct each party to submit for the Court's consideration a letter brief

9

addressing the *Landis* factors noted above.  Cf. Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 654 (3d Cir. 1990) ("If the district court wishes to consider abstention (or a stay in lieu of dismissal on abstention grounds) it will have to develop a record and make *Colorado River*-oriented findings . . . .").

### B. Structural's Request for a Protective Order

As stated in the parties' joint case management plan, Liberty Mutual proposes to depose no more than ten witnesses, as permitted by Rule 30(a)(2)(A)(i) of the Federal Rules of Civil Procedure.  (Doc. No. 16 at 9–10.)  According to Liberty Mutual, the proposed depositions are necessary

> because [the] deponents are likely to have information that is reasonably likely to lead to the discovery of admissible evidence concerning, inter alia, (i) the basis for the University's termination of Lyons' prime contract; (ii) the quality or propriety of Structural's micropile drilling work, including its compaction grouting and "proof-drilling" operations, and (iii) the good faith basis of Lyons in withholding any further payments from Structural pending a resolution of these issues.

(Doc. No. 23 at 17.)  Structural objects to the proposed depositions on the basis that "[a]llowing Liberty Mutual to conduct ten depositions in a case that exclusively relates to two narrow issues will serve only to harass Structural and needlessly increase the costs of this litigation." (Doc. No. 24 at 26.)  To prevent these prospective wrongs, Structural seeks a protective order limiting the total number of depositions to three per side.  (Id.)

Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure provides in pertinent part that "[o]n motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

10

Fed. R. Civ. P. 26(b)(2)(C). Here, Structural offers nothing more than a vague allegation that the proposed depositions are "unreasonably cumulative or duplicative" of the discovery conducted in the Board proceeding (Doc. No. 24 at 26) and an unsubstantiated claim that the proposed depositions are meant to "harass Structural and needlessly increase the costs of this litigation" (id.). "[I]t is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a showing of good cause. Id. (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.1986)). Accordingly, the Court will deny Structural's request for a protective order limiting the total number of depositions to three per side.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STRUCTURAL GROUP, INC.,** : | |
| : | **Civil Action No. 1:07-cv-01793** |
| **Plaintiff** : | |
| : | **(Chief Judge Kane)** |
| v. : | |
| : | |
| **LIBERTY MUTUAL** : | |
| **INSURANCE COMPANY,** : | |
| : | |
| **Defendant** : | |
| ............................... : | |
| : | |
| **LIBERTY MUTUAL** : | |
| **INSURANCE COMPANY,** : | |
| : | |
| **Third-Party Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **LYONS CONSTRUCTION** : | |
| **SERVICES, INC.** : | |
| : | |
| **Third-Party Defendant** : | |

**ORDER**

**AND NOW**, on this 16th day of October 2008, upon due consideration of Defendant Liberty Mutual Insurance Company's motion to stay the above-captioned action (Doc. No. 22) and Plaintiff Structural Group, Inc.'s request for a protective order limiting the total number of depositions to three per side (Doc. No. 24 at 25–26), and for the reasons given in the memorandum filed herewith, **IT IS HEREBY ORDERED THAT**:

    1.    Liberty Mutual Insurance Company's motion to stay the above-captioned action (Doc. No. 22) is **DENIED**.

    2.    Liberty Mutual Insurance Company shall **FILE** a letter brief addressing the *Landis* factors noted in the memorandum filed herewith no later than ten (10) days

       from the date of this order.  Such letter shall be no more than three (3) pages in length, any caption or signature block included.  Structural Group, Inc. shall **FILE** a letter brief addressing the *Landis* factors noted in the memorandum filed herewith no later than ten (10) days after service of Liberty Mutual Insurance Company's letter brief.  Such letter shall be no more than three (3) pages in length, any caption or signature block included.  No further letter briefs may be filed.

3. Structural Group, Inc.'s request for a protective order limiting the total number of depositions to three per side (Doc. No. 24 at 25–26) is **DENIED**.

                                           S/ Yvette Kane
                                           Yvette Kane, Chief Judge
                                           United States District Court
                                           Middle District of Pennsylvania