**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STRUCTURAL GROUP, INC.,** | : | |
| | : | **Civil Action No. 1:07-cv-01793** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **LIBERTY MUTUAL** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | : | |
| | : | |
| **LIBERTY MUTUAL** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Third-Party Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LYONS CONSTRUCTION** | : | |
| **SERVICES, INC.** | : | |
| | : | |
| **Third-Party Defendant** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Defendant Liberty Mutual Insurance Company's motion to dismiss

count two of Plaintiff Structural Group, Inc.'s complaint (Doc. No. 11).  For the reasons that

follow, the motion will be granted.

**I.      BACKGROUND**

Plaintiff Structural Group, Inc. ("Structural") initiated the above-captioned action on

October 1, 2007, by filing a two-count complaint against Defendant Liberty Mutual Insurance

Company ("Liberty Mutual").  (Doc. No. 1.)  In the complaint, Structural alleges that Liberty

Mutual breached the terms of a payment bond (the "Bond") when Liberty Mutual failed to remit

payment to Structural for foundation work performed at the Shippensburg University Student

Recreation Center (the "Project") pursuant to a subcontract (the "Subcontract") with Lyons

Construction Services, Inc. ("Lyons"), the Project's prime contractor.  (Doc. No. 1.)  In count

two of the complaint, Structural seeks an award of interest, penalty payments, and attorneys' fees

pursuant to the Commonwealth's Contractor and Subcontractor Payment Act, 62 Pa. Cons. Stat.

Ann. §§ 3931–3939.[1]  (Doc. No. 1 at 6–10.)  Nine days after the filing of Structural's complaint,

the State System of Higher Education ("SSHE"), the Project's owner, filed a claim against

Liberty Mutual and Lyons with the Pennsylvania Board of Claims (the "Board").  See State Sys.

of Higher Educ. v. Lyons Constr. Servs., Inc., Board of Claims Docket No. 3916.

Lyons filed an answer and counterclaim with the Board on November 28, 2007.  Id.  That

same day, Lyons and Structural entered into a litigation cooperation agreement (the

"Agreement") pursuant to which Structural agreed to "investigate, prepare, and assemble its own

claims and defenses [against the SSHE] and present the same [by and through Lyons] in an ex rel

fashion to the Pennsylvania Board of Claims."  (Doc. No. 23-4 at 17.)  As the Agreement

explains:

> Both Lyons and Structural claim that they are entitled to additional
> compensation for delays, inefficiency, certain extra work, and other
> costs due to, inter alia, the differing site conditions encountered
>
> during Structural's work on the Project.  In addition, both Lyons and
> Structural claim that they are entitled to the lost profit and other costs
> due to the wrongful termination of their respective contracts. . . .

---

[1] To reduce the likelihood of confusion, the Court notes that Structural mistakenly
denominates Count II of its complaint as "Count I—Commonwealth Procurement Code."
(Doc. No. 1 at 7.)  Count I, which precedes Structural's claims under the Commonwealth
Procurement Code, is properly denominated "Count I—Breach of Contract."  (Doc. No. 1 at 6.)

> Additionally, Structural claims that it is entitled to payment of monies owed under the Subcontract, including payments of monies owed for work performed pursuant to a Change order dated September 14, 2006. . . .   Neither Lyons nor its surety, Liberty Mutual Insurance Company, have made payment to Structural for the Subcontract balance and Change Order at issued based on [SSHE's] wrongful termination of the Prime Contract.

(Id. at 15–16.)

On December 3, 2007, Liberty Mutual moved to dismiss Count II of Structural's complaint (Doc. No. 11) and filed a brief in support thereof (Doc. No. 12).  Structural timely filed a brief in opposition (Doc. No. 13), to which Liberty Mutual timely filed a brief in reply (Doc. No. 14).

## II.      DISCUSSION

### A.      Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is properly granted when, accepting all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  Although the moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the complaint must allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (citations omitted).  Moreover, in order to satisfy federal pleading requirements, a plaintiff's obligation "to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)

(brackets and quotation marks omitted) (quoting Twombly, 127 S. Ct. at 1964–65).

### B.     Liberty Mutual's Motion to Dismiss

Liberty Mutual has moved to dismiss count two of Structural's complaint in which

Structural seeks an award of interest, penalty payments, and attorneys' fees pursuant to the

Commonwealth's Contractor and Subcontractor Payment Act, 62 Pa. Cons. Stat. Ann.

§§ 3931–3931 (the "Act").  (Doc. No. 1 at 6–10.)  In general, Liberty Mutual contends that

neither the Act nor the Commonwealth Procurement Code (the "Code"), 62 Pa. Cons. Stat. Ann.

§ 101 et seq., of which the Act is a part, apply to sureties.  (Doc. No. 12 at 3–4.)  Accordingly,

Liberty Mutual maintains that there is no legal basis for Structural's claim against Liberty

Mutual in its capacity as Lyons's surety.  In its brief in opposition, Structural counters that,

"[s]ince Liberty Mutual was 'standing in the shoes' of Lyons when it refused to honor the terms

of the Payment Bond, Liberty Mutual is likewise bound to act in good faith pursuant to the

Code."  (Doc. No. 13 at 7.)  In essence, Structural maintains that Liberty Mutual, as Lyons's

surety, must satisfy Lyons's liabilities under the Code.  The Pennsylvania Supreme Court has not

yet decided whether the Code's provisions extend to sureties.  For this reason, both Liberty

Mutual and Structural rely upon statutory analyses of the Code and the decisions of other courts

to support their arguments.

The purpose of the Act is to ensure prompt payment of contractors by government

agencies and, in turn, subcontractors by contractors for work performed in accordance with the

provisions of a contract for a public work.  See generally 62 Pa. Cons. Stat. Ann. §§ 3931–3939.

The Act provides in part as follows:

> Performance by a subcontractor in accordance with the provisions of the contract shall entitle the subcontractor to payment from the party with whom the subcontractor has contracted. . . . When a subcontractor has performed in accordance with the provisions of the contract, a contractor shall pay to the subcontractor, and each subcontractor shall in turn pay to its subcontractors, the full or proportional amount received for each such subcontractor's work and material, based on work completed or services provided under the subcontract, 14 days after receipt of a progress payment.

Id. § 3933(a), (d).  The Act further provides that if a payment due to a subcontractor is not timely made, the contractor shall be liable to the subcontractor for interest on the amount due, id. § 3933(d), and that

> [i]f arbitration or a claim with the Board of Claims or a court of competent jurisdiction is commenced to recover payment due under [the Act] and it is determined that the government agency, contractor or subcontractor has failed to comply with the payment terms of [the Act], the arbitrator, the Board of Claims or the court may award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was withheld in bad faith [and, n]otwithstanding any agreement to the contrary, the prevailing party in any proceeding to recover any payment under [the Act] may be awarded a reasonable attorney fee in an amount to be determined by the Board of Claims, court or arbitrator . . . .

Id. § 3935.

As noted, the Pennsylvania Supreme Court has not yet decided whether the Code applies to sureties such as Liberty Mutual.  The Third Circuit Court of Appeals has more than once had occasion to advise district courts on the difficulties of ascertaining the applicable state law when "the highest state court has [not] recently spoken to the precise question at issue in a particular setting."  McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 661 (3d Cir. 1980); see, e.g., Travelers Indem. Co. of Ill. v. DiBartolo, 131 F.3d 343, 348 (3d Cir. 1997); Aloe Coal Co. v. Clark Equip.

<u>Co.</u>, 816 F.2d 110, 117 (3d Cir. 1987); <u>Jones & Laughlin Steel Corp. v. Johns-Manville Sales</u>

<u>Corp.</u>, 626 F.2d 280, 285 (3d Cir. 1980).  The decisions make clear that

> disposition of such cases must be governed by a prediction of how
> the state's highest court would decide were it confronted with the
> problem. . . . An accurate forecast of [state] law, as it would be
> expressed by its highest court, requires an examination of all relevant
> sources of that state's law in order to isolate those factors that would
> inform its decision. . . . In the absence of authority directly on point,
> decisions by [the highest state] court in analogous cases provide
> useful indications of the court's probable disposition of a particular
> question of law. . . . It is important to note, however, that our
> prediction cannot be the product of a mere recitation of previously
> decided cases.  In determining state law, a federal tribunal should be
> careful to avoid the danger of giving a state court decision a more
> binding effect than would a court of that state under similar
> circumstances.

<u>McKenna</u>, 622 F.2d at 662.  With regard to the decisions of Pennsylvania's lower courts, the

decision of a trial court in one Pennsylvania county is no more binding upon a trial court of

another county than it is upon the Supreme Court of Pennsylvania—which is to say, not at all.

<u>See</u> <u>Castle Pre-Cast Super. Walls of Del., Inc. v. Strauss-Hammer</u>, 610 A.2d 503, 505

(Pa. Super. Ct. 1992) (noting that a "trial court decision, from a different county, provided no

binding precedent for the [trial court of another county]"); <u>City of Philadelphia v. Price</u>,

215 A.2d 661, 663 (Pa. 1966) (explaining that a decision of the Court of Common Pleas is not

binding upon the Supreme Court of Pennsylvania).  "Nor does the subsequent refusal to hear

appeal by the Supreme Court . . . elevate the decision of the court below to that position."

<u>Burgoon v. Zoning Hearing Bd. of Charlestown Twp.</u>, 277 A.2d 837, 840–41 (Pa. Commw. Ct.

1971).

      This Court's research reveals that few courts, state or federal, have considered the issue

of whether the Code applies to sureties.  Indeed, the term "surety" appears only once in the more

than 14,000 words that constitute the general procurement provisions applicable to government agencies such as the SSHE and of which the Act is a part.  <u>See generally</u> 62 Pa. Cons. Stat. Ann. §§ 3101–4604.  Even then, the term is used in the context of the Act's safe-harbor provision which provides in part that "[o]nce a contractor has made payment to the subcontractor . . . , future claims for payment against the contractor or the contractor's surety by parties owed payment from the subcontractor which has been paid shall be barred."  <u>Id.</u> § 3939.  Moreover, sureties are absent from the list of actors subject to the Act.  <u>Id.</u> § 3932(c) ("[T]he government agency shall pay to the contractor or design professional, in addition to the amount due, interest on the amount due."); <u>id.</u> § 3933(d) ("[T]he contractor shall pay to the subcontractor, in addition to the amount due, interest [on the amount due]"); <u>id.</u> § 3935(b) (awarding attorneys' fees where "the government agency, contractor or subcontractor acted in bad faith.").

In opposing the instant motion, Structural relies most heavily upon an unpublished decision of the Court of Common Pleas of Allegheny County in which the trial judge assessed interest and attorneys' fees against a surety under the Act.  (Doc. No. 13 at 6–7 (citing <u>Zavala, Inc. v. Five R-Excavating, Inc.</u>, No. GD-05-4723 (Ct. Com. Pl. of Allegheny County June 20, 2007)).  In <u>Zavala</u>, the trial judge, upon motion for post-trial relief, held that "a surety is obligated to pay the full amount that its principal was obligated to pay regardless of whether or not part of that amount arises from the application of the Prompt Payment Act against the principal."  (Doc. No. 13-2 at 5.)  In so holding, the trial judge acknowledged that

> The Court had earlier focused more on the Prompt Payment Act when considering the liability of both Defendants.  This led to some confusion.  The Court now realizes that the Act applies to [the principal] only.  The liability of [the surety] for damages under the act owed by [the principal] arises out of the law of sureties.

(Id.)  Citing a century-old decision of the Pennsylvania Supreme Court wherein the court stated that a "surety is bound to the full extent that the principal is bound," the trial judge remarked that the "pertinent cases are old but are still good law which must periodically be rediscovered and re-learned" and concluded that it would be "neither inequitable nor harsh to require [the surety] to pay [the contractor's] full obligation to [the subcontractor]."  (Doc. No. 13-2 at 5–7 (citing Philadelphia & R.R. Co. v. Knight, 16 A. 492 (Pa. 1889).)

Upon consideration, the Court finds it doubtful that the Pennsylvania Supreme Court would agree with the holding in Zavala or the reasoning that the court applied.  In reaching its conclusion that the Act extended to sureties, the trial court in Zavala did not undertake a substantial analysis of the Act or the remedies available thereunder.  Moreover, the court ignored the fact that the express terms of the statute do not extend to sureties.  The fact that the Act expressly applies to a number of specific actors but does not, by its terms, apply to sureties suggests that the Pennsylvania legislature intended to omit sureties from the list of persons subject to the Act.  See Commonwealth v. Ostrosky, 866 A.2d 423, 430 (Pa. Super. Ct. 2005) ("The maxim[, *expressio unius est exclusio alterius*,] is one of longstanding application, and it is essentially an application of common sense and logic."), aff'd 909 A.2d 1224 (Pa. 2006).  If, as Structural contends, the legislature had intended for the Act to apply to sureties, it would have included them in the list of actors subject to the Act.

The Court is instead persuaded by the more fully reasoned approach taken by the Western District of Pennsylvania in R.W. Sidley, Inc. v. U.S. Fid. & Guar. Co., 319 F. Supp. 2d 554 (W.D. Pa. 2004) and again in Sippel Dev. Co. v. W. Sur. Co., No. 2:05-46, 2008 WL 728649, at *10 (W.D. Pa. Mar. 17, 2008).  In R.W. Sidley, the court held that neither

the Code nor the Act provided any basis for the assessment of penalties, interest on the amount due, or attorneys' fees against sureties.  <u>See</u> 319 F. Supp. 2d at 560–61.  In reaching that holding, the court undertook in-depth statutory analyses of the applicable sections of the Code and the applicable sections of the Act, applying Pennsylvania's Statutory Construction Act of 1972, 1 Pa. Cons. Stat. Ann. §§ 1501–1991, which endorses a plain-meaning approach to statutory interpretation.  <u>See</u> <u>id.</u> at 559–61 (citing <u>Commonwealth v. Stanley</u>, 446 A.2d 583, 587 (1982) ("When interpreting statutory language, the Pennsylvania Supreme Court is guided by the 'plain meaning' rule of construction." (citing 1 Pa. Cons. Stat. Ann. § 1903(a)))).  Ultimately, the court rejected the subcontractor's argument that the Act applies to sureties because neither the caselaw nor the Act explicitly provided for such application.  This Court agrees and therefore predicts that the Pennsylvania Supreme Court would answer the question of whether the Code or, more particularly, the Act applies to sureties in the negative.  Liberty Mutual's motion to dismiss Count II of Structural's complaint will therefore be granted.  An order consistent with this memorandum will issue separately.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STRUCTURAL GROUP, INC.,** | : | |
| | : | **Civil Action No. 1:07-cv-01793** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **LIBERTY MUTUAL** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | : | |
| | : | |
| **LIBERTY MUTUAL** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Third-Party Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LYONS CONSTRUCTION** | : | |
| **SERVICES, INC.** | : | |
| | : | |
| **Third-Party Defendant** | : | |

**ORDER**

**AND NOW**, on this 5th day of March 2009, upon due consideration of Defendant

Liberty Mutual Insurance Company's motion to dismiss count two of Plaintiff Structural Group,

Inc.'s complaint (Doc. No. 11), and for the reasons given in the memorandum filed herewith, **IT**

**IS HEREBY ORDERED THAT** the motion is **GRANTED**.

/s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania